IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAMARA BENE LYONS,

          Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

CIVIL ACTION FILE NO.

1:15-CV-0228-WSD-JFK

## **FINAL REPORT AND RECOMMENDATION**

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

application.  For the reasons set forth below, the court **RECOMMENDS** that the

Commissioner's decision be **AFFIRMED**.

## I.    **Procedural History**

On March 7, 2011, an application for supplemental security income was filed

on behalf of Plaintiff Tamara Bene Lyons.  [Record ("R.") at 20, 153-61].  Plaintiff,

who was a child under the age of 18 when the application was filed, allegedly became

disabled on October 1, 2006, due to learning disorder and conduct disorder.  [R. at 20,

23].  After Plaintiff's application was denied initially and on reconsideration, an administrative hearing was held on March 6, 2013.  [R. at 20, 38-82, 92-93].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on May 25, 2013, and the Appeals Council denied Plaintiff's request for review on September 16, 2014.  [R. at 11-37].  Plaintiff filed her complaint in this court on January 27, 2015, seeking judicial review of the Commissioner's final decision.  [Doc. 3].

## II.    Facts

Plaintiff was born on July 3, 1996, and was fourteen years old when the disability application was filed. [R. at 23].  The ALJ found that Plaintiff has borderline intellectual functioning; disruptive behavior or conduct disorder; learning disorder in reading, writing, and mathematics; and depressive disorder.  [Id.].  Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 23-24].  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that functionally

2

equals the severity of the listings.  [R. at 25-33].  The ALJ, therefore, concluded that Plaintiff has not been under a disability since the application was filed.  [R. at 33].

The decision of the ALJ [R. at 20-33] states the relevant facts of this case as modified herein as follows:

The claimant alleges impairment related to learning disorder and conduct disorder.  (Exhibits 1A, 2A).  The medical record of evidence extends largely to educational records and reports from consultative psychological evaluations.  This record documents the claimant's history of borderline intellectual function (Exhibits 8F, 9F), conduct disorder, and learning disorder (Exhibits 4E, 12E, 13E, 15E, 17E, 1F, 7F, 8F).  An assessment from mental health providers at the DeKalb Community Services Board references a diagnosis of depressive disorder.  (Exhibit 11F).

Consultative psychological evaluators have indicated the need for therapeutic intervention and medication to improve the claimant's academic and behavioral function.  (Exhibits 1F, 8F).  Mental health providers have indicated the need for treatment to improve the mother/daughter relationship between the claimant and her mother and to decrease the claimant's negative behavior.  (Exhibit 11F). The claimant receives special education services to address weaknesses in reading, writing, and mathematics.  These weaknesses have resulted in two grade retentions.  At times,

3

special education services have included a behavioral intervention plan. (Exhibits 4E, 12E, 13E, 15E, 17E, 7F, 9F).

In 2007, the claimant was referred to Dr. Jennifer Jackson-Allen, a school psychologist, for a psychoeducational evaluation. The claimant was performing below grade level in all academic areas with little progress despite implementation of strategies to manage her performance. She required constant attention to manage academically. She struggled to complete assignments independently, to follow directions, and to express herself verbally and in writing. She also failed to readily apply previously learned information to new lessons and exhibited difficulty maintaining concentration and focus. (Exhibit 9F).

During the psychoeducational evaluation by Dr. Jackson-Allen, the claimant exhibited slowed processing of information, as well as inattention at times. Based on the claimant's evaluation performance, educational performance, and behavioral reports, Dr. Jackson-Allen determined that the claimant manifested significant processing weaknesses in verbal reasoning, language processing, and visual-spatial processing, some of which resulted in reading comprehension and written expression scores below the claimant's demonstrated ability level. (Exhibit 9F). Dr. Jackson-Allen determined that the claimant's social and emotional adjustment is

4

satisfactory. The psychologist found that the claimant has significant deficits in academic areas related to verbal processing, language processing, reading comprehension, and written expression. Dr. Jackson-Allen also determined that the claimant functions in the borderline range of intelligence. (Exhibit 9F).

In June 2008, a consultative psychological evaluator, W. Brenard Francis, Ph.D., diagnosed the claimant with borderline intellectual function. Dr. Francis questioned whether the claimant's adaptive functioning deficits were sufficient to meet the criteria for a diagnosis of mild mental retardation. (Exhibit 8F at 7). Dr. Francis assessed these adaptive functioning deficits based on the claimant's reported history of angry outbursts and disruptive behavior. (Exhibit 8F).

In June 2011, another consultative psychological evaluator, Arlene Noriega, Ph.D., diagnosed the claimant only with conduct disorder, reading disorder, and mathematics disorder. Dr. Noriega indicated a need for mental health treatment to address the claimant's behavioral problems in conjunction with academic and behavioral accommodations at school to improve her prognosis. (Exhibit 1F). During the evaluation, the claimant indicated several times that she was unable to complete assigned tasks or did not know how to complete them. (Exhibit 1F).

5

The claimant's full scale IQ score, as measured by Wechsler Intelligence Scale for Children-Fourth Edition, was 66 in 2008 when administered by Dr. Francis. (Exhibit 8F).  However, the claimant's full scale IQ score was 72 in 2004 and 80 in 2011 when administered by other psychologists. (Exhibit 9F). Education records from 2010 reflect a verbal score of 71, a qualitative score of 80, a non-verbal score of 77, and a composite IQ score of 74 in 2010.  (Exhibit 12E at 1; Exhibit 18E at 14-15).  In addition, the claimant is on track to graduate high school with a regular education diploma.  (Exhibit 15E at 13).

Under the claimant's current individualized educational plan for the 2012-2013 school year, she receives special education services for history, math, and science within the general education curriculum.  She requires no assistive devices and exhibits sufficient vision and hearing ability for adequate academic participation.  She reads at grade level and shows strength in reading comprehension and writing processes. Although teachers have noted that the claimant's behavior often times interferes with her ability to perform academically at grade level, no behavioral intervention plan is currently in place.  An extended school year has not been recommended.  (Exhibits 12E, 15E).

6

According to the claimant's hearing testimony, she currently attends ninth grade, although she should be in the eleventh grade based on her age. She receives special education services in some classes, but she is on track to graduate. Of all her teachers, she likes only her math teacher who pushes the claimant's performance and helps her at the same time. The claimant's mother, Ms. Lyons, testified that the claimant is a "slow learner" who was held back twice in third grade but will graduate with a regular education diploma.

The claimant indicated at the hearing that she cleans her room and the bathroom, washes dishes, and cooks fish and chicken. She independently showers and brushes her teeth, with admitted need for occasional reminders from her mother. Ms. Lyons testified that the claimant has to be made to do her chores and has to be reminded to manage personal hygiene. Upon receiving reminders, the claimant responds with statements that she wants to kill herself.

The claimant testified that she likes to read magazines and books about drama and mysteries. She has tried out for basketball at school, and she plans to try out for a dance group. Ms. Lyons testified that the claimant has no hobbies beyond talking on the phone. The claimant further testified that she has friends at school. She fights with some of her siblings. She admits to getting mad and cursing out teachers, other

students, and her mother, even though she is disciplined for such behavior. She prefers being alone. She expresses suicide ideation with no demonstrated plan or intent. She admits to a remote history of cutting behavior. Ms. Lyons' testimony confirmed the claimant's preference for being alone and expressed concern over the claimant's disrespectful behavior.

At the time of the 2013 mental health assessment, the claimant reported onset of oppositional defiance in fourth or fifth grade without apparent stressors. She expresses defiance by talking back at home and at school. She experiences daily depression and anxiety, with suicide ideation triggered by anger. She becomes angry when people ask her to do something for no reason or ask her the same things repeatedly. (Exhibit 11F).

Although the claimant and her mother agreed to comply with mental health therapy to improve the mother/daughter relationship and to decrease the claimant's negative behavior, no longitudinal mental health treatment notes are clearly included in the record. Yet both Dr. Francis (Exhibit 8F) and Dr. Noriega (Exhibit 1F) recommended in 2008 and 2011, respectively, that the claimant needed mental health treatment and medication to improve her academic performance and behavior. Notably, at the 2008 consultative psychological evaluation, the claimant, who is in a

8

sibship of seven, expressed difficulty with growing up in a large family. She described how the younger ones were always running around the house screaming and whining. (Exhibit 8F). At the 2011 consultative psychological evaluation, the claimant's mother expressed concern that the claimant showed self-isolating behavior by going to her room and locking the door to prevent others from bothering her. She yelled and screamed at other children and students. (Exhibit 1F). During the 2013 mental health assessment, the claimant revealed that the inconsistency in the relationship with her mother was due to her having so many children. (Exhibit 11F).

Although the claimant continues to experience outbursts in the classroom, her individualized education plan for the 2012-2013 school year does not include a behavioral assessment plan. (Exhibit 12E at 18; Exhibit 15E at 13). In 2011, she had a behavioral intervention plan that included input from a mentor and an in-school counselor to strategize her daily school experience. (Exhibit 4E). The claimant had two out-of-school suspensions for misconduct in 2012, but none in 2013 according to hearing testimony.

Academically, the claimant's individualized education plan for the 2012-2013 school year shows that she will receive a regular education high school diploma by passing all her classes. She receives special education services, but in the general

9

education curriculum.  She reads at grade level and shows strengths in reading comprehension and writing, although she is at a fifth grade math level.  (Exhibit 15E). In August 2012, the school promoted the claimant to the ninth grade.  (Exhibit 13E).

Educational staffing notes from February 14, 2012, indicate that the claimant was performing slightly below grade level in all academic areas.  (Exhibit 13E at 30). Consequent to the 2008 consultative psychological evaluation, Dr. Francis noted the claimant's having been retained twice in school suggested functioning "well below" her age level.  At that time, the claimant was performing at grade level in math, which, because of prior grade retention, was two years below her peers.  She was below grade level in spelling and reading.  (Exhibit 8F).

Teachers have noted the claimant's need for frequent redirection and positive encouragement to remain on task.  (Exhibit 12E at 17).  However, recent educational staffing reports reflect that the claimant has no behaviors affecting her learning or the learning of others, although at times her outbursts interrupt the classroom environment causing need for a "time out" to calm her behavior.  (Exhibit 12E at 18).  In earlier grades, the claimant would rush through her assignments but correct the majority of her mistakes when they were returned to her.  (Exhibit 7F at 62).

10

A teacher questionnaire indicates no problems in moving about and manipulating objects.  (Exhibit 4E).  The claimant alleges no physical impairment or medical condition.   (Exhibits 1A, 2A).   Education records indicate no known medication taken by the claimant (Exhibit 13E at 30) and reflect her ability to participate in extracurricular activities and non-academic activities without accommodation.  (Exhibit 12E at 2).  Educational personnel have noted no vision or hearing impairments.  (Exhibit 15E at 13).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

Social Security law provides that an individual under the age of eighteen will be considered disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  See 42 U.S.C. § 1382c(a)(3)(D).

11

The regulations provide a sequential evaluation process consisting of three steps when determining if a child is disabled.  See 20 C.F.R. § 416.924(a).  The first step requires the ALJ to determine whether the child is engaged in substantial gainful activity.  A child is not disabled if she is engaged in such activity.  See id.  If the child is not engaged in substantial gainful activity, then the ALJ must determine at the second step whether the child has a severe impairment.  See id.  A child who does not have a severe impairment will be found not disabled.  If a severe impairment is found, then the ALJ must determine whether the impairment meets, medically equals, or functionally equals the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id.  Medical equivalence is established when the claimant has "other findings related to [her] impairment that are at least of equal medical significance to the required criteria."  20 C.F.R. § 416.926(b)(1)(ii).  When determining functional equivalence, the child's functioning in the following six domains will be considered: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  See 20 C.F.R. § 416.926a(b)(1).  The child's impairment or combination of impairments functionally equals the Listings if she has

12

"marked" limitations in two of the above-listed domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).

The scope of judicial review of the Commissioner's decision is limited.  "We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'"  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant was born on July 3, 1996.  Therefore, she was an adolescent on March 7, 2011, the date application was filed, and is currently an adolescent. (20 C.F.R. § 416.926a(g)(2)).

13

2.  The claimant has not engaged in substantial gainful activity since March 7, 2011, the application date.  (20 C.F.R. §§ 416.924(b) and 416.971, *et seq.*).

3.  The claimant has the following severe impairments: borderline intellectual function; disruptive behavior or conduct disorder; learning disorder in reading, writing, and mathematics; and depressive disorder.  (20 C.F.R. § 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.924, 416.925, and 416.926).

5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (20 C.F.R. §§ 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since March 7, 2011,the date the application was filed.  (20 C.F.R. § 416.924(a)).

[R. at 23-33].

## V.   Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since March 7, 2011, the application date.  [R. at 23].  At the second step, the ALJ determined that Plaintiff has the following severe impairments: borderline intellectual function; disruptive behavior or conduct disorder; learning disorder in reading, writing, and mathematics; and depressive disorder.  [Id.].  The ALJ determined at the third step of the sequential

AO 72A

(Rev.8/82)

evaluation that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 23-24].  The ALJ also found that Plaintiff's impairments do not functionally equal the severity of the Listings because they do not result in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning.  [R. at 25-33].  Therefore, the ALJ found that Plaintiff was not disabled as defined by the Social Security regulations since the date her application was filed.  [R. at 33].

Plaintiff argues that the ALJ's decision should be reversed because he failed to apply the proper legal standards and because substantial evidence does not support the ALJ's decision.  [Doc. 12].  According to Plaintiff, the ALJ failed to properly evaluate the credibility of Plaintiff's testimony.  [Id. at 13-16].  Plaintiff also contends that substantial evidence does not support the ALJ's determination that Plaintiff's impairments were not functionally equivalent to the Listings.  [Id. at 16-22].

**A.    ALJ's Credibility Determination of Plaintiff's Testimony**

At the administrative hearing before the ALJ, Plaintiff and her mother testified about the symptoms and limitations that Plaintiff experiences as a result of her mental impairments.  [R. at 42-79].  The ALJ found that Plaintiff's "medically determinable

15

impairments could reasonably be expected to produce the alleged symptoms" but that the "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." [R. at 26]. Plaintiff argues that remand is warranted because the ALJ failed to adequately explain why he found that Plaintiff's testimony lacked credibility.[1] [Doc. 12 at 15-16].

When a claimant seeks to establish disability through subjective testimony of pain or other symptoms, a three part "pain standard" established by the Eleventh Circuit applies. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. The ALJ must consider the claimant's subjective testimony if the pain standard is met. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). When evaluating the claimant's testimony, the ALJ is required to consider the following factors: the claimant's daily activities; location, duration, frequency, and intensity of the claimant's symptoms;

---

[1]Plaintiff makes no argument concerning the ALJ's evaluation of the testimony of Plaintiff's mother. [R. at 40-66; Doc. 12 at 14-16]. Therefore, the court will not address this issue.

16

precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate his symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms. See 20 C.F.R. § 416.929(c)(3); SSR 96-7p.  "If the ALJ decides not to credit a claimant's testimony as to her pain [or other subjective symptoms], he must articulate explicit and adequate reasons for doing so."  Foote, 67 F.3d at 1561-62.

In the present case, Plaintiff argues that the ALJ failed to provide adequate explanations for discrediting Plaintiff's testimony.  However, Plaintiff has failed to identify, and the court has been unable to find, any part of her testimony that was rejected by the ALJ.  [Doc. 12 at 14-16].  In fact, it appears that the real basis of Plaintiff's disagreement with the ALJ's decision is that he *accepted* rather than *rejected* her testimony–testimony which reveals that she does not experience significant functional limitations and restrictions as a result of her symptoms.

As the ALJ noted, Plaintiff testified that she independently showers and brushes her teeth and that she only needs occasional reminders from her mother.  [R. at 26, 79]. She testified that she cleans her room and that her mother asks her to clean the bathroom, wash dishes, and cook fish and chicken.  [R. at 74].  Plaintiff also testified

17

that she likes to read magazines and books about drama and mysteries, that she has tried out for basketball at school, and that she plans to try out for a dance group. [R. at 68, 75-78]. According to Plaintiff, she has friends at school and she does not have a problem being around the majority of kids at school. Plaintiff testified that she gets along with most of her siblings, but she also acknowledged that she fights with them. [R. at 69, 70, 73, 76]. She also stated that her behavior towards her mother has improved. [R. at 26, 70-74]. And as the ALJ pointed out, Plaintiff testified that she has a very positive relationship with her math teacher. [R. at 25, 27, 68-69].

Despite current claims that Plaintiff has disabling mental limitations, the ALJ noted that there is no evidence that Plaintiff has sought long-term mental health treatment. [R. at 26]. The ALJ explained that Plaintiff and her mother agreed to attend "mental health therapy to improve the mother/daughter relationship and to decrease the claimant's negative behavior." [R. at 26]. The ALJ also cited to records from Dr. Brenard Francis and Dr. Arlene Noriega who "recommended in 2008 and 2011, respectively, that the claimant needed mental health treatment and medication to improve her academic performance and behavior." [R. at 26, 463, 577]. But as the ALJ wrote in his decision, "[N]o longitudinal mental health treatment notes are clearly included in the record." [R. at 26].

18

The ALJ discussed Plaintiff's difficulties growing up in a large family in a sibship of seven. [R. at 26]. As the ALJ explained, in evaluations conducted in 2008 and 2011, Plaintiff described the conflicts between herself and her siblings, as well as her behavior in screaming and yelling at others and in isolating herself. [Id.]. The ALJ noted that: Plaintiff "admits to getting mad and cursing out teachers, other students, and her mother"; she "prefers being alone"; she "expresses suicide ideation with no demonstrated plan or intent"; and she "admits to a remote history of cutting behavior." [Id.]. The ALJ also cited to a 2013 mental health assessment during which Plaintiff "revealed that inconsistency in the relationship with her mother was due to her having so many children." [Id.].

However, the ALJ noted that recent evidence reveals that Plaintiff's behavior and academic performance have improved. [R. at 27]. In school records from 2012, Plaintiff's teachers stated that she "does not have behaviors that affect her learning or the learning of others" and that "[a]ll educational tasks can be accomplished using standard classroom tools." [R. at 29, 262]. The ALJ explained that while Plaintiff "continues to experience outbursts in the classroom, her individualized education plan [IEP] for the 2012-2013 school year does not include a behavioral assessment plan." [R. at 27, 262, 312]. The ALJ also pointed out that Plaintiff had two suspensions for

19

misconduct in 2012, but hearing testimony revealed that Plaintiff had no such suspensions in 2013. [R. at 27]. The ALJ noted that Plaintiff "reads at grade level and shows strengths in reading comprehension and writing, although she is at a fifth grade math level." [R. at 27, 300-12]. For the 2012-2013 school year, Plaintiff's IEP indicated that she receives special education services but in the general education curriculum and that she will receive a regular education high school diploma by passing all her classes. [R. at 27, 263-93].

In response to the evidence supporting the ALJ's findings, Plaintiff offers nothing more than a conclusory assertion that "these few positive signs are greatly overshadowed by the record as a whole, which is highly supportive of the statements in support of disability . . . ." [Doc. 12 at 16]. But Plaintiff has failed to identify what "statements in support of disability" were made by Plaintiff but rejected by the ALJ. [Id.]. Plaintiff's testimony reveals that her mental impairments result in some functional limitations in her ability to acquire and use information, attend and complete tasks, and interact and relate with others.[2] [R. at 25-30]. But the testimony of Plaintiff also supports the ALJ's decision that she has not been disabled since her 2011

---

[2]These functional limitations, as noted *infra*, were discussed extensively by the ALJ in his decision. [R. at 25-33].

20

application was filed because her impairments do not meet, medically equal, or functionally equal the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In summary, Plaintiff has failed to show how the ALJ's findings are inconsistent with her testimony.  The undersigned would have preferred an explicit statement from the ALJ saying that he accepted Plaintiff's testimony as true.  But it seems clear from the ALJ's decision that he credited Plaintiff's testimony, albeit implicitly, and the court has found no caselaw holding that it is error for the ALJ to implicitly credit a claimant's testimony.  The ALJ is only required to offer "explicit and adequate reasons" when he discredits a claimant's subjective testimony.  Foote, 67 F.3d at 1561-62.  In light of these facts, the court finds that remand is not warranted based on the ALJ's credibility assessment of Plaintiff's testimony.

## B.    Functional Equivalence

Under Social Security regulations, a child will be found disabled if she has an impairment or a combination of impairments that meets, medically equals, or functionally equals the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 416.924(a).  The ALJ found that Plaintiff's impairments do not meet or medically equal the Listings, and Plaintiff makes no argument that the

21

ALJ erred in making this finding. [R. at 23-24; Doc. 12]. However, Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff's impairments do not functionally equal the severity of the Listings. [R. at 25-33; Doc. 12 at 16-22].

"[E]ven if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities." Shinn ex rel. Shinn v. Comm'r of Social Security, 391 F.3d 1276, 1279 (11th Cir. 2004). As noted *supra*, functional equivalence is determined by evaluating the child's functioning in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. See 20 C.F.R. § 416.926a(b)(1). The child's impairments functionally equal the Listings if she has "marked" limitations in two of the domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A marked limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

22

An extreme limitation is one that "interferes very seriously with [the childs's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). The ALJ in the present case found that Plaintiff does not have a disability because she is not extremely limited in any domain and has a marked limitation in only one domain: acquiring and using information. [R. at 27-29]. Plaintiff argues that the ALJ should have found that she has a marked limitation in attending and completing tasks and a marked limitation in interacting and relating with others. [Doc. 12 at 17-21].

### 1.   Attending and Completing Tasks

When evaluating the domain of attending and completing tasks, the Social Security Administration considers how well the child is able to focus and maintain attention and how well she begins, carries through, and finishes her activities. See 20 C.F.R. § 416.926a(h). Also considered under this domain is "the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace." Social Security Ruling ("SSR") 09-4p. Finally, the Administration evaluates the child's ability: to change focus after completing a task; to avoid impulsive thinking and acting; and to organize, plan ahead, prioritize competing tasks, and manage time. See id. Limitations in attending and completing tasks are often

23

found in children with attention-deficit/hyperactivity disorder ("AD/HD").  <u>See</u> <u>id.</u>

Children with AD/HD "whose primary difficulty is inattention may be easily distracted or have difficulty focusing on what is important and staying on task.  They may fail to pay close attention to details and make careless mistakes in schoolwork, avoid projects that require sustained attention, or lose things needed for school or other activities beyond what is expected of children their age who do not have impairments."  <u>Id.</u> "Children with AD/HD whose primary difficulty is hyperactivity and impulsivity may fidget with objects instead of paying attention, talk instead of listening to instructions, or get up from their desks and wander around the classroom beyond what is expected of children their age who do not have impairments."  <u>Id.</u>

The relevant Social Security regulation makes the following statements about the ability of adolescents age 12 to 18 to attend and complete tasks:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

24

20 C.F.R. § 416.926a(h)(2)(v).  The regulation lists the following as examples of limited functioning in attending and completing tasks:

    (i)     You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.

    (ii)    You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.

    (iii)   You repeatedly become sidetracked from your activities or you frequently interrupt others.

    (iv)   You are easily frustrated and give up on tasks, including ones you are capable of completing.

    (v)    You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3).  These examples, however, "do not necessarily describe a 'marked' or 'extreme' limitation."  Id.

      In the present case, the ALJ found that Plaintiff has less than a marked limitation in attending and completing tasks.  [R. at 29].  Plaintiff argues that the ALJ erred in making this finding.  [Doc. 12 at 17-18].  According to Plaintiff, the "ALJ should have found that Plaintiff had at least marked limitation in this domain."  [Id. at 17].  In support of her argument, Plaintiff cites to the ALJ's finding that she has marked limitations in acquiring and using information.  [R. at 28].  Plaintiff also cites to the ALJ's description of a 2007 evaluation completed by Dr. Jennifer Jackson-Allen, a school psychologist, who found that Plaintiff required constant attention to manage academically, exhibited difficulty maintaining concentration and focus, and struggled

to complete assignments independently, to follow directions, and to express herself verbally and in writing.  [R. at 28, 499-510, 579-90].  Plaintiff notes that in a 2008 evaluation, she expressed difficulty understanding academic material.  [R. at 574]. School notes from 2012 indicate that Plaintiff requires frequent redirection and positive encouragement to remain on task and that at times her outbursts interrupt the classroom and a "time out" is needed to calm her behavior.  [R. at 29, 261-62, 368]. Finally, Plaintiff's individualized education plan ("IEP") from August 2012 included teacher assistance for ensuring that she was focused and paying attention before presenting new information.  [R. at 255].  Plaintiff argues that the "ALJ failed to properly evaluate this evidence when assessing Plaintiff's limitation in attending and completing tasks, and thus improperly failed to find she is markedly limited in this domain." [Doc. 12 at 19].  The court disagrees.

The ALJ offered an extensive discussion of the 2007 evaluation completed by Dr. Jackson-Allen.  [R. at 24, 27, 28].  However, the ALJ also correctly noted that "more recent evidence shows improvement in the claimant's academic performance and behavior." [R. at 27].  In the 2012 school records cited by Plaintiff and discussed *supra*, Plaintiff's teachers stated that she "does not have behaviors that affect her learning or the learning of others."  [R. at 29, 262].  The same records state, "All

26

educational tasks can be accomplished using standard classroom tools." [R. at 262]. And the ALJ explained that while Plaintiff "continues to experience outbursts in the classroom, her [IEP] for the 2012-2013 school year does not include a behavioral assessment plan." [R. at 27, 262, 312]. The 2013 IEP cited by the ALJ states, "Tamara does not exhibit any behaviors that would require a behavior intervention plan." [R. at 27, 312]. The ALJ also wrote, "The claimant had two out-of-school suspensions for misconduct in 2012, but none in 2013 according to hearing testimony." [R. at 27]. This evidence supports the ALJ's finding that Plaintiff's behavior had improved.

The ALJ also cited to evidence which showed that Plaintiff's academic performance had improved. [Id.]. The ALJ noted that Plaintiff "reads at grade level and shows strengths in reading comprehension and writing, although she is at a fifth grade math level." [R. at 27, 300-12]. For the 2012-2013 school year, Plaintiff's IEP indicated that "she will receive a regular education high school diploma by passing all her classes. She receives special education services, but in the general education curriculum . . . . In August 2012, the school promoted the claimant to the ninth grade." [R. at 27, 263-93].

27

The court finds that the ALJ did not commit error when he evaluated Plaintiff's limitations in attending and completing tasks. The ALJ discussed the record evidence relevant to this domain, and he offered a sufficient explanation for making his finding. [R. at 24-27, 29]. Furthermore, a reasonable person would accept the above-discussed evidence as adequate to support the ALJ's finding that Plaintiff has less than a marked limitation in attending and completing tasks. See Lewis, 125 F.3d at 1440. Accordingly, the undersigned concludes that remand is not warranted on this basis.

## 2.   Interacting and Relating with Others

Plaintiff next argues that the ALJ erred when he found that she has less than marked limitations in the domain of interacting and relating with others. [Doc. 12 at 19-21]. When evaluating a child's limitations in this domain, the Social Security Administration considers how well the child is able to initiate and sustain emotional connections with others, cooperate with others, and respect and take care of the possessions of others. See 20 C.F.R. § 416.926a(i). Also considered under this domain is the child's ability to develop and use the language of her community, comply with rules, and respond to criticism. See id. SSR 09-5p provides, in part:

> In the domain of "Interacting and relating with others," we consider a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and

> others.   This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community. Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others.  In addition, because communication is essential to both interacting and relating, we consider in this domain the speech and language skills children need to speak intelligibly and to understand and use the language of their community.

SSR 09-5p.  "Children with impairment-related limitations in this domain may not be disruptive; therefore, their limitations may go unnoticed.  Such children may be described as socially withdrawn or isolated, without friends, or preferring to be left alone.  These children may simply not understand how to accomplish social acceptance and integration with other individuals or groups."  Id.  The following are examples of typical functioning in the domain of interacting and relating with others for an adolescent age 12 to 18: she initiates and develops friendships with children of the same age; she relates appropriately to children of all ages and adults, both individually and in groups; she is increasingly able to resolve conflicts between self and family members, peers, and others outside of family; she recognizes that there are different social rules for dealing with other children than with adults; she describes feelings, seeks information, relates events, and tells stories in all kinds of environments and with

AO 72A

(Rev.8/82)

all kinds of people; she develops an increasing desire for privacy; and she focuses less attention on parents and more on relationships with peers.  See id.

The ALJ in the present case found that Plaintiff has less than marked limitations in interacting and relating with others.  [R. at 30].  Plaintiff contends that the ALJ's finding constituted error.  [Doc. 12 at 19-21].  In support of her argument, Plaintiff cites to the ALJ's summary of evidence which shows that she has negative interactions with teachers, students, and family members, she has frequently been disciplined in school for behavior misconduct, she was under a behavioral intervention plan while receiving special education services, and she sought mental health treatment for negative behavior.  [Doc. 12 at 20; R. at 30, 194-208, 316-46, 592-601].  Plaintiff argues that the ALJ did not discuss the record showing that Plaintiff has consistently expressed a preference for being alone and locks herself in her room.  [Doc. 12 at 20; R. at 30, 79, 458].

Plaintiff also cites to a 2008 psychological evaluation conducted by Dr. Brenard Francis who noted that Plaintiff and her mother indicated a history of self-injurious behavior and expressions of suicidal ideation.  [Doc. 12 at 20; R. at 573].  Plaintiff and her mother reported that she is easily angered, especially when asked to do something that she does not want to do.  [R. at 573].  Dr. Francis noted that Plaintiff's mood was

30

somewhat apprehensive and dysphoric, her affect was constricted, and she had deficits in concentration, receptive language, and recall. [R. at 575]. In April 2011, Plaintiff's teacher reported that Plaintiff has an obvious problem expressing anger appropriately. [R. at 202]. During a psychological evaluation completed in June 2011, Plaintiff's mother reported that Plaintiff has been suspended from school for fighting and cursing out her teacher and that she fails to follow instructions given by her teacher. [R. at 457-58]. Plaintiff's mother also reported that Plaintiff is somewhat isolated and withdrawn and often goes to her room and locks the door to be left alone. [R. at 458]. Plaintiff cites to school records showing that she was often disciplined for disruptive behavior, including stealing, fighting, failing to follow instructions, yelling in class, rude behavior toward teachers, skipping class, and using an electronic device and refusing to turn it over to the teacher. [R. at 270-273; 375-81]. Plaintiff also points to a March 2013 evaluation which notes that Plaintiff was assessed with severe oppositional defiance disorder and severe inappropriate expressions of anger. [R. at 593-94]. After summarizing this evidence, Plaintiff asserts that the ALJ should have found that she had at least marked limitations in interacting and relating with others. [Doc. 12 at 19-22]. The undersigned finds Plaintiff's arguments unpersuasive.

31

As discussed *supra*, the ALJ noted that recent evidence reveals that Plaintiff has shown improvement in her academic performance and behavior.  [R. at 27].  Plaintiff testified that, in the past, she has been written up and placed in a different class because she had cursed at teachers.  However, she testified that she had not gotten into trouble recently.  [R. at 72-73].  Although Plaintiff had a behavioral intervention plan in 2011, her teachers found that for the 2012-2013 school year, no such plan was needed.  [R. at 27, 262, 312].  Moreover, while Plaintiff had two out-of-school suspensions for misconduct in 2012, the ALJ noted that there were no suspensions in 2013 according to testimony at the administrative hearing.  [R. at 27].

Plaintiff testified that she does not have a problem being around the majority of kids at school.  [R. at 76].  She also stated that she gets along with most of her siblings and that her behavior towards her mother had improved.  [R. at 26, 70-74].  The ALJ cited to Plaintiff's testimony that she had a very positive relationship with her math teacher.  [R. at 25, 27, 68-69].  In addition, Plaintiff expressed a desire to participate in extra-curricular activities and testified that she had friends at school.  [R. at 26-27, 69-70, 75-76].  The record also shows that the medical opinions and psychological assessments of Plaintiff do not support a finding that she has marked limitations in

32

interacting with others.  [R. at 26-28, 464-69, 470-75, 476-81, 482-87, 488-93, 572-78].

The court finds that the ALJ complied with the relevant regulations when he evaluated Plaintiff's limitations in interacting and relating with others.  The ALJ adequately discussed the record and explained his reasons for finding that Plaintiff has less than marked limitations in this domain, and substantial evidence in the record supports the ALJ's decision.  [R. at 24-27, 30].  In light of these facts, and because the court is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ, remand is not warranted on this basis.

## VI.   Conclusion

For all of the forgoing reasons and cited authority, the undersigned concludes that the ALJ applied the proper legal standards in reaching his decision that Plaintiff was not disabled and that the ALJ's decision was supported by substantial evidence. It is, therefore, **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule

AO 72A

(Rev.8/82)

72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is

**DIRECTED** to terminate the reference to the Magistrate Judge.

SO RECOMMENDED, this 4th day of February, 2016.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

34