IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAMARA BENE LYONS,

                Plaintiff,

    v.                                       1:15-cv-228-WSD

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final

Report and Recommendation [15] ("R&R"). The R&R recommends that the Court

affirm the final decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying Plaintiff Tamara Bene Lyons's

("Plaintiff") application for Disability Insurance Benefits ("DIB").

**I.      BACKGROUND**

      A.    <u>Procedural History</u>

On March 7, 2011, an application for supplemental security income was

filed on behalf of Plaintiff Tamara Bene Lyons. (Record [8] ("R.") at 20, 153-61).

Plaintiff, who was a child under the age of 18 when the application was filed,

allegedly became disabled on October 1, 2006, due to a learning and conduct

disorder.  (R. at 20, 23).  After Plaintiff's application was denied initially and on

reconsideration, an administrative hearing was held on March 6, 2013.  (R. at 20,

38-82, 92-93).  On May 25, 2014, the Administrative Law Judge ("ALJ") issued a

decision denying Plaintiff's application, and, on September 16, 2014, the Appeals

Council denied Plaintiff's request for review.  (R. at 11-37).  On January 27, 2015,

Plaintiff filed her complaint [3] seeking judicial review of the Commissioner's

final decision.

      B.     <u>Facts</u>[1]

Plaintiff was born on July 3, 1996, and was fourteen years old when the

disability application was filed.  (R. at 23).  The ALJ found that Plaintiff has

borderline intellectual functioning; disruptive behavior or conduct disorder;

learning disorder in reading, writing, and mathematics; and depressive disorder.

(<u>Id.</u>).  Although these impairments are "severe" within the meaning of the Social

Security regulations, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of

the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23-24).

---

[1]      The facts are taken from the R&R and the record.  The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

The ALJ further found that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (R. at 25-33).  The ALJ, therefore, concluded that Plaintiff has not been under a disability since the application was filed.  (R. at 33).

The decision of the ALJ, (R. at 20-33), provides the relevant facts of this case:

The claimant alleges impairment related to learning disorder and conduct disorder.  (Exhibits 1A, 2A).  The medical record of evidence extends largely to educational records and reports from consultative psychological evaluations.  This record documents the claimant's history of borderline intellectual function (Exhibits 8F, 9F), conduct disorder, and learning disorder (Exhibits 4E, 12E, 13E, 15E, 17E, 1F, 7F, 8F).  An assessment from mental health providers at the DeKalb Community Services Board references a diagnosis of depressive disorder.  (Exhibit 11F).

Consultative psychological evaluators have indicated the need for therapeutic intervention and medication to improve the claimant's academic and behavioral function.  (Exhibits 1F, 8F).  Mental health providers have indicated the need for treatment to improve the mother/daughter relationship between the claimant and her mother and to decrease the claimant's negative behavior.

3

(Exhibit 11F).  The claimant receives special education services to address weaknesses in reading, writing, and mathematics.  These weaknesses have resulted in two grade retentions.  At times, special education services have included a behavioral intervention plan.  (Exhibits 4E, 12E, 13E, 15E, 17E, 7F, 9F).

In 2007, the claimant was referred to Dr. Jennifer Jackson-Allen, a school psychologist, for a psychoeducational evaluation.  The claimant was performing below grade level in all academic areas with little progress despite implementation of strategies to manage her performance.  She required constant attention to manage academically.  She struggled to complete assignments independently, to follow directions, and to express herself verbally and in writing.  She also failed to readily apply previously-learned information to new lessons and exhibited difficulty maintaining concentration and focus.  (Exhibit 9F).

During the psychoeducational evaluation by Dr. Jackson-Allen, the claimant exhibited slowed processing of information, as well as inattention at times.  Based on the claimant's evaluation performance, educational performance, and behavioral reports, Dr. Jackson-Allen determined that the claimant manifested significant processing weaknesses in verbal reasoning, language processing, and visual-spatial processing, some of which resulted in reading comprehension and written expression scores below the claimant's demonstrated ability level.  (Exhibit 9F).

Dr. Jackson-Allen determined that the claimant's social and emotional adjustment is satisfactory.  The psychologist found that the claimant has significant deficits in academic areas related to verbal processing, language processing, reading comprehension, and written expression.  Dr. Jackson-Allen also determined that the claimant functions in the borderline range of intelligence.  (Exhibit 9F).

In June 2008, a consultative psychological evaluator, W. Brenard Francis, Ph.D., diagnosed the claimant with borderline intellectual function.  Dr. Francis questioned whether the claimant's adaptive functioning deficits were sufficient to meet the criteria for a diagnosis of mild mental retardation.  (Exhibit 8F at 7). Dr. Francis assessed these adaptive functioning deficits based on the claimant's reported history of angry outbursts and disruptive behavior.  (Exhibit 8F).

In June 2011, another consultative psychological evaluator, Arlene Noriega, Ph.D., diagnosed the claimant only with conduct disorder, reading disorder, and mathematics disorder.  Dr. Noriega indicated a need for mental health treatment to address the claimant's behavioral problems in conjunction with academic and behavioral accommodations at school to improve her prognosis.  (Exhibit 1F). During the evaluation, the claimant indicated several times that she was unable to complete assigned tasks or did not know how to complete them.  (Exhibit 1F).

The claimant's full scale IQ score, as measured by Wechsler Intelligence

Scale for Children-Fourth Edition, was 66 in 2008 when administered by

Dr. Francis.  (Exhibit 8F).  However, the claimant's full scale IQ score was 72 in

2004 and 80 in 2011 when administered by other psychologists.  (Exhibit 9F).

Education records from 2010 reflect a verbal score of 71, a qualitative score of 80,

a non-verbal score of 77, and a composite IQ score of 74 in 2010.  (Exhibit 12E at

1; Exhibit 18E at 14-15).  In addition, the claimant is on track to graduate high

school with a regular education diploma.  (Exhibit 15E at 13).

　　　Under the claimant's current individualized educational plan for the

2012-2013 school year, she receives special education services for history, math,

and science within the general education curriculum.  She requires no assistive

devices and exhibits sufficient vision and hearing ability for adequate academic

participation.  She reads at grade level and shows strength in reading

comprehension and writing processes.  Although teachers have noted that the

claimant's behavior often times interferes with her ability to perform academically

at grade level, no behavioral intervention plan is currently in place.  An extended

school year has not been recommended.  (Exhibits 12E, 15E).

　　　According to the claimant's hearing testimony, she currently attends ninth

grade, although she should be in the eleventh grade based on her age.  She receives

special education services in some classes, but she is on track to graduate.  Of all

her teachers, she likes only her math teacher who pushes the claimant's performance and helps her at the same time.  The claimant's mother, Ms. Lyons, testified that the claimant is a "slow learner" who was held back twice in third grade but will graduate with a regular education diploma.

The claimant indicated at the hearing that she cleans her room and the bathroom, washes dishes, and cooks fish and chicken.  She independently showers and brushes her teeth, with admitted need for occasional reminders from her mother.  Ms. Lyons testified that the claimant has to be made to do her chores and has to be reminded to manage personal hygiene.  Upon receiving reminders, the claimant responds with statements that she wants to kill herself.

The claimant testified that she likes to read magazines and books about drama and mysteries.  She has tried out for basketball at school, and she plans to try out for a dance group.  Ms. Lyons testified that the claimant has no hobbies beyond talking on the phone.  The claimant further testified that she has friends at school.  She fights with some of her siblings.  She admits to getting mad and cursing out teachers, other students, and her mother, even though she is disciplined for such behavior.  She prefers being alone.  She expresses suicide ideation with no demonstrated plan or intent.  She admits to a remote history of cutting behavior.  Ms. Lyons' testimony confirmed the claimant's preference for being alone and

expressed concern over the claimant's disrespectful behavior.

At the time of the 2013 mental health assessment, the claimant reported onset of oppositional defiance in fourth or fifth grade without apparent stressors. She expresses defiance by talking back at home and at school. She experiences daily depression and anxiety, with suicide ideation triggered by anger. She becomes angry when people ask her to do something for no reason or ask her the same things repeatedly. (Exhibit 11F).

Although the claimant and her mother agreed to comply with mental health therapy to improve the mother/daughter relationship and to decrease the claimant's negative behavior, no longitudinal mental health treatment notes are clearly included in the record. Both Dr. Francis (Exhibit 8F) and Dr. Noriega (Exhibit 1F), however, recommended in 2008 and 2011, respectively, that the claimant needed mental health treatment and medication to improve her academic performance and behavior. Notably, at the 2008 consultative psychological evaluation, the claimant, who is in a sibship of seven, expressed difficulty with growing up in a large family. She described how the younger ones were always running around the house screaming and whining. (Exhibit 8F). At the 2011 consultative psychological evaluation, the claimant's mother expressed concern that the claimant showed self-isolating behavior by going to her room and locking

the door to prevent others from bothering her.  She yelled and screamed at other children and students.  (Exhibit 1F).  During the 2013 mental health assessment, the claimant revealed that the inconsistency in the relationship with her mother was due to her having so many children.  (Exhibit 11F).

Although the claimant continues to experience outbursts in the classroom, her individualized education plan for the 2012-2013 school year does not include a behavioral assessment plan.  (Exhibit 12E at 18; Exhibit 15E at 13).  In 2011, she had a behavioral intervention plan that included input from a mentor and an in-school counselor to strategize her daily school experience.  (Exhibit 4E).  The claimant had two out-of-school suspensions for misconduct in 2012, but none in 2013, according to hearing testimony.

Academically, the claimant's individualized education plan for the 2012-2013 school year shows that she will receive a regular education high school diploma by passing all her classes.  She receives special education services, but in the general education curriculum.  She reads at grade level and shows strengths in reading comprehension and writing, although she is at a fifth grade math level. (Exhibit 15E).  In August 2012, the school promoted the claimant to the ninth grade. (Exhibit 13E).

Educational staffing notes from February 14, 2012, indicate that the claimant

was performing slightly below grade level in all academic areas. (Exhibit 13E at 30). Consequent to the 2008 consultative psychological evaluation, Dr. Francis noted that the fact the claimant was been retained twice in school suggested functioning "well below" her age level. At that time, the claimant was performing at grade level in math, which, because of prior grade retention, was two years below her peers. She was below grade level in spelling and reading. (Exhibit 8F).

Teachers have noted the claimant's need for frequent redirection and positive encouragement to remain on task. (Exhibit 12E at 17). However, recent educational staffing reports reflect that the claimant has no behaviors affecting her learning or the learning of others, although at times her outbursts interrupt the classroom environment causing need for a "time out" to calm her behavior. (Exhibit 12E at 18). In earlier grades, the claimant would rush through her assignments but correct the majority of her mistakes when they were returned to her. (Exhibit 7F at 62).

A teacher questionnaire indicates claimant does not have problems in moving about and manipulating objects. (Exhibit 4E). The claimant does not allege any physical impairment or medical condition. (Exhibits 1A, 2A). Education records do not indicate that claimant takes any medication, (Exhibit 13E at 30), and reflect her ability to participate in extracurricular activities and

non-academic activities without accommodation.  (Exhibit 12E at 2).  Educational

personnel have not noted vision or hearing impairments.  (Exhibit 15E at 13).

The ALJ made the following findings of fact and conclusions of law:

1.     The claimant was born on July 3, 1996. Therefore, she was an
       adolescent on March 7, 2011, the date application was filed,
       and is currently an adolescent.  (20 C.F.R. § 416.926a(g)(2)).

2.     The claimant has not engaged in substantial gainful activity
       since March 7, 2011, the application date.  (20 C.F.R. §§
       416.924(b) and 416.971, *et seq.*).

3.     The claimant has the following severe impairments: borderline
       intellectual function; disruptive behavior or conduct disorder;
       learning disorder in reading, writing, and mathematics; and
       depressive disorder.  (20 C.F.R. § 416.924(c)).

4.     The claimant does not have an impairment or combination of
       impairments that meets or medically equals the severity of one
       of the listed impairments in 20 C.F.R. Part 404, Subpart P,
       Appendix 1.  (20 C.F.R. §§ 416.924, 416.925, and 416.926).

5.     The claimant does not have an impairment or combination of
       impairments that functionally equals the severity of the listings.
       (20 C.F.R. §§ 416.924(d) and 416.926a).

6.     The claimant has not been disabled, as defined in the Social
       Security Act, since March 7, 2011, the date the application was
       filed.  (20 C.F.R. § 416.924(a)).

(R. at 23-33).

Additional facts will be set forth as necessary during discussion of Plaintiff's

arguments.

## II.   LEGAL STANDARDS

### A.   Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  Where, as here, no party objects to the report and recommendation, the court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

### B.   Review of a Decision of the Commissioner of Social Security

A court must "review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## III.   DISCUSSION

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2)-(3).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  To determine if an applicant suffers a disability under the Social Security Act, an ALJ performs a five-step evaluation.  See id.; 20 C.F.R. §§ 404.1520, 416.920.  The five steps are:  (1) the claimant must prove that she is not engaged in substantial gainful activity; (2) the claimant must prove that she is suffering from a severe

impairment or combination of impairments; (3) the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listed Impairment"); (4) if the claimant cannot prove the existence of a listed impairment, she must prove that her impairment prevents her from performing her past relevant work; (5) the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides her past relevant work.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If, at any step of the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

Here, the ALJ found at the first step of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since March 7, 2011, the application date.  (R. at 23).  At the second step, the ALJ determined that Plaintiff has the following severe impairments:  borderline intellectual function; disruptive behavior or conduct disorder; learning disorder in reading, writing, and mathematics; and depressive disorder.  (Id.).  The ALJ determined at the third step of the sequential evaluation that Plaintiff does not have an impairment or

14

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23-24).  The ALJ also found that Plaintiff's impairments do not functionally equal the severity of the Listings because they do not result in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning.  (R. at 25-33).  The ALJ therefore found that Plaintiff was not disabled as defined by the Social Security regulations since the date her application was filed.  (R. at 33).

Plaintiff argues that the ALJ's decision should be reversed because he failed to apply the proper legal standards and because substantial evidence does not support the ALJ's decision.  ([12]).  According to Plaintiff, the ALJ failed to properly evaluate the credibility of Plaintiff's testimony.  (Id. at 13-16).  Plaintiff also contends that substantial evidence does not support the ALJ's determination that Plaintiff's impairments were not functionally equivalent to the Listings.  (Id. at 16-22).

A.    ALJ's Credibility Determination of Plaintiff's Testimony

At the administrative hearing before the ALJ, Plaintiff and her mother testified about the symptoms and limitations that Plaintiff experiences as a result of her mental impairments.  (R. at 42-79).  The ALJ found that Plaintiff's "medically

determinable impairments could reasonably be expected to produce the alleged symptoms" but that the "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (R. at 26). Plaintiff argues that remand is warranted because the ALJ failed to adequately explain why he found that Plaintiff's testimony lacked credibility.[2] ([12] at 15-16).

The Magistrate Judge noted that Plaintiff failed to identify, and the Magistrate was unable to find, any part of Plaintiff's testimony that was rejected by the ALJ. (R&R at 17). The Magistrate also noted that "it appears that the real basis of Plaintiff's disagreement with the ALJ's decision is that he *accepted* rather than *rejected* her testimony—testimony which reveals that she does not experience significant functional limitations and restrictions as a result of her symptoms." (Id. (emphasis in original)). The Magistrate determined that it is clear from the ALJ's decision that he credited Plaintiff's testimony, and that an ALJ is only required to offer "explicit and adequate reasons" when he *discredits* a claimant's subjective testimony. (Id. at 21). The Court agrees. See Foote v. Charter, 67 F.3d 1553, 1560 (11th Cir. 1995). Accordingly, the Court finds no plain error in the Magistrate Judge's determination that remand is not warranted based on the ALJ's

---

[2]     Plaintiff did not contest the ALJ's evaluation of Plaintiff's mother's testimony.

credibility assessment of Plaintiff's testimony.  See Slay, 714 F.2d at 1095.

B.    Functional Equivalence

Under Social Security regulations, a child will be found disabled if she has an impairment or a combination of impairments that meets, medically equals, or functionally equals the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 416.924(a).  The ALJ found that Plaintiff's impairments do not meet or medically equal the Listings, and Plaintiff does not argue that the ALJ erred in making this finding.  (R. at 23-24; [12]).  Plaintiff contends, however, that substantial evidence does not support the ALJ's finding that Plaintiff's impairments do not functionally equal the severity of the Listings. (R. at 25-33; [12] at 16-22).

Functional equivalence is determined by evaluating the child's functioning in the following six domains:  acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  See 20 C.F.R. § 416.926a(b)(1).  The child's impairments functionally equal the Listings if she has "marked" limitations in two of the domains or an "extreme" limitation in one domain.  20 C.F.R. §416.92a(e)(2)(i).  An extreme limitation is one that "interferes very seriously with [the child's] ability to independently

17

initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). The ALJ found that Plaintiff does not have a disability because she is not extremely limited in any domain and has a marked limitation in only one domain: acquiring and using information. (R. at 27-29). Plaintiff argues that the ALJ should have found that she has a marked limitation in attending and completing tasks and a marked limitation in interacting and relating with others. ([12] at 17-21).

The Magistrate Judge determined that the ALJ did not err in his evaluation of Plaintiff's limitations in attending and completing tasks. (R&R at 28). The Magistrate noted that the ALJ discussed the record evidence relevant to this determination, and he offered a sufficient explanation for making his finding. (Id.). The Magistrate also determined that a reasonable person would accept the evidence discussed by the ALJ as adequate to support the ALJ's finding that Plaintiff has less than a marked limitation in attending and completing tasks. (Id.). The Court finds no plain error in the Magistrate Judge's findings and recommendation. See Slay, 714 F.2d at 1095.

The Magistrate also determined that the ALJ complied with the relevant regulations when he evaluated Plaintiff's limitations in interacting and relating with others. The Magistrate noted that the ALJ adequately discussed the record and explained his reasons for finding that Plaintiff has less than marked limitations

in this domain, and substantial evidence in the record supports the ALJ's decision. The Magistrate determined that, in light of the facts, and because the court is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ, remand is not warranted on this basis.  The Court finds no plain error in the Magistrate Judge's findings and recommendation.  See Slay, 714 F.2d at 1095.

IV.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [15] is **ADOPTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** this 25th day of February, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE